# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE JEROME ROBERTSON, | Case No. 1:17-cv-01022-KES-BAM (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS DENYING DEFENDANT GARCIA'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| GARCIA, *et al.*, | (ECF No. 72) |
| Defendants. | **FOURTEEN (14) DAY DEADLINE** |

**I.     Introduction**

Plaintiff Wayne Jerome Robertson ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's first amended complaint against Defendant Garcia ("Defendant") for excessive force in violation of the Eighth Amendment for spraying Plaintiff with OC spray on January 24, 2017. (ECF No. 57.)

Currently before the Court is Defendant's motion for summary judgment on the grounds that the undisputed material facts show that Plaintiff's claim does not satisfy the requirements for § 1983 claims. (ECF No. 72.)[1] Plaintiff filed an opposition to the motion for summary judgment on June 6, 2023. (ECF No. 74.) Defendant filed a reply on June 19, 2023. (ECF No. 75.) The

---

[1] Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. (ECF No. 72-1.); *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1988); *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988).

1

1  motion for summary judgment is fully briefed.  Local Rule 230(l).  For the reasons set forth
2  below, the Court recommends that Defendant's motion for summary judgment be denied.[2]

## II. Legal Standard

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one that may affect the outcome of the case under the applicable law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof.  *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323).  In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.*

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis omitted).  "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.* at 929; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

---

[2] This motion was dropped inadvertently by the Court's CM/ECF reporting/calendaring system resulting in the prolonged delay in resolution.

1  U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its
2  opponent must do more than simply show that there is some metaphysical doubt as to the material
3  facts.") (citation omitted).  "Where the record taken as a whole could not lead a rational trier of
4  fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S.
5  at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

6  In resolving a summary judgment motion, "the court does not make credibility
7  determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he
8  evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn
9  in [its] favor." *Anderson*, 477 U.S. at 255.  Inferences, however, are not drawn out of the air; the
10 nonmoving party must produce a factual predicate from which the inference may reasonably be
11 drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985),
12 *aff'd*, 810 F.2d 898 (9th Cir. 1987).

13 In arriving at these findings and recommendations, the Court carefully reviewed and
14 considered all arguments, points and authorities, declarations, exhibits, statements of undisputed
15 facts and responses thereto, if any, objections, and other papers filed by the parties.  Omission of
16 reference to an argument, document, paper, or objection is not to be construed to the effect that
17 this Court did not consider the argument, document, paper, or objection. This Court thoroughly
18 reviewed and considered the evidence it deemed admissible, material, and appropriate.

19 **III.    Discussion**
20     **A.    Evidentiary Objections**

21 Defendant raises objections to certain of Plaintiff's exhibits based on lack of foundation.
22 (ECF No. 75, p. 9.)  To the extent the evidence cited contains handwritten notes not included in
23 the original documents, (*id.* at 23–24, 63), Defendant's objections are sustained.  The Court
24 further notes that these exhibits are already included in support of Defendant's summary
25 judgment motion and the docket for this action, without handwritten notes.  (ECF No. 72-4, pp. 5,
26 13; ECF No. 44, p. 1.)

27 Defendant's remaining objection as to lack of foundation with respect to Plaintiff's
28 Exhibit D, (ECF No. 74, p. 29), is overruled.  This document appears to be an excerpt from

Plaintiff's medical records, dated March 2, 2020, noting prescriptions for medications to treat asthma and other conditions. In light of the tangential nature of the evidence to the claims at issue, and at this stage of the action, the Court does not find the authentication objection to be preclusive of the evidence submitted.

### B. Video Evidence

In his opposition, Plaintiff references a January 25, 2017 videotaped interview conducted by Lieutenant Tingley, which was previously lodged with the Court by Defendant. (*See* ECF No. 44.) The existence of the video does not change the usual rules of summary judgment: in general, the court will draw all reasonable inferences from the video in plaintiff's favor. *Blankenhorn v. City of Orange*, 485 F.3d 463, 468 n. 1 (9th Cir. 2007). However, if the video "blatantly contradict[s]" a party's account, "so that no reasonable jury could believe it," the court need not credit the contradicted version on summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Williams v. Las Vegas Metro. Police Dep't*, No. 2:13-CV-1340-GMN-NJK, 2016 WL 1169447, at *4 (D. Nev. Mar. 22, 2016) (The existence of the video does not change the usual rules of summary judgment: in general, the court will draw all reasonable inferences from the video in plaintiff's favor.); *see Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018) ("The record is viewed in the light most favorable to the nonmovants . . . so long as their version of the facts is not blatantly contradicted by the video evidence."). The Court will consider the video and will consider the facts in the light most favorable to Plaintiff.

### C. Undisputed Material Facts ("UMF")[3]

1. The incident at issue occurred at the California Correctional Institute in Tehachapi ("CCI") on January 24, 2017. (ECF No. 14 (First Amended Complaint, "FAC"), p. 4;

---

[3] *See* Statement of Undisputed Material Facts in Support of Garcia's Motion for Summary Judgment. (ECF No. 72-2.) Plaintiff did not comply with the rules in preparing his opposition, including by failing to reproduce Defendant's Statement of Undisputed Material Facts and providing "a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support" of any disputed facts, or providing a statement of disputed facts. Local Rule 260(b). As a result, Defendant's Statement of Undisputed Material Facts is accepted except where brought into dispute by Plaintiff's verified first amended complaint and portions of his opposition to the motion for summary judgment signed under penalty of perjury. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence); *Johnson v. Meltzer*, 134 F.3d 1393, 1399–1400 (9th Cir. 1998) (same, with respect to verified motions). Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

1  ECF No. 72-4 ("Ruhparwar Decl."), ¶ 7, Ex. I ("Robertson Depo.") at 36:6–7.)

2. Plaintiff was called from his housing unit to the A Facility gym to take a urinalysis test. (FAC, p. 4.)

3. Plaintiff was instructed to get a urinalysis bottle and proceed to the restroom to provide a urine sample. (Ruhparwar Decl., ¶ 2, Ex. A ("Garcia Incident Report"), p. 1; Ex. B ("Jones Incident Report"), p. 1.)

4. Plaintiff walked to the restroom area all the way to the back where Defendant could not see him. (ECF No. 72-3 ("Garcia Decl."), ¶ 6; Garcia Incident Report, p. 1.)

5. Defendant found this suspicious as inmates often do this when they are looking to obtain "clean" urine from other inmates or otherwise circumvent the orderly administration of urinalysis testing. (Garcia Decl., ¶ 6.)

6. Therefore, Defendant instructed Plaintiff to move closer to him and face forward (but away from Defendant) so that Defendant could observe Plaintiff during the collection of his urine sample. (*Id.* ¶ 6; Garcia Incident Report, p. 1.)

7. Plaintiff replied, "what do you want to see my wee wee" and turned to his right until he faced Defendant. (Garcia Decl., ¶ 7; Garcia Incident Report, p. 1; Jones Incident Report, p. 1.)

8. Plaintiff also said, "you want to see a grown man's dick." (Garcia Decl., ¶ 7; Garcia Incident Report, p. 1; Jones Incident Report, p. 1; ECF No. 72-5, Ex. G, p. 27.)

9. Defendant feared that an attack on his person was imminent. (Garcia Decl., ¶ 8.)

10. Defendant pepper-sprayed Plaintiff in the face. (*Id.*; Garcia Incident Report, pp. 1–2; Jones Incident Report, p. 1.)

11. Defendant transitioned to his hand-held baton, quickly side stepped to his left, performed a forward strike aiming for the right side of Plaintiff's back, and struck Plaintiff with his baton. (Garcia Decl., ¶ 8; Garcia Incident Report, p. 2; Jones Incident Report, p. 1.)

12. Plaintiff stopped his forward movement, got down to the ground, and submitted to handcuffs. (Garcia Decl., ¶ 8; Garcia Incident Report, p. 2; Jones Incident Report, p. 1.)

13. Right after the incident, medical staff performed an exam on Plaintiff and noted that

|   |   |
|---|---|
| 1 | Plaintiff had pain and a reddened area on the left side of his face.  (Ruhparwar Decl., ¶ 2, |
| 2 | Ex. D.) |
| 3 | 14. Plaintiff received a Rules Violation Report for "Assault on a Peace Officer by means not |
| 4 | likely to cause GBI" and was found guilty.  (*Id.* ¶¶ 3–5, Exs. E–G.) |
| 5 | 15. Plaintiff does not have any records to support his allegation that Defendant used excessive |
| 6 | force.  (Robertson Depo., p. 114:6–7.) |
| 7 | 16. Plaintiff does not have any witnesses to support his claim against Defendant.  (*Id.* at 39:3– |
| 8 | 10, 47:21–23, 49:4–8.) |
| 9 | 17. After the incident at issue, Plaintiff only obtained the name of one inmate, Mr. Alcorn, |
| 10 | who was at the gym during the incident.  (*Id.* at 39:10–12.) |
| 11 | 18. Plaintiff admitted that he does not know what Mr. Alcorn would say if he was asked what |
| 12 | happened at the gym.  (*Id.* at 47:5–7.) |
| 13 | 19. Plaintiff never spoke with Mr. Alcorn about what happened at the gym.  (*Id.* at 46:15–22, |
| 14 | 47:15–20.) |
| 15 | 20. Plaintiff never received any statement from Mr. Alcorn regarding what occurred at the |
| 16 | gym.  (*Id.* at 47:2–4.) |
| 17 | 21. Plaintiff never received any information from Mr. Alcorn about what he saw at the gym |
| 18 | on the day of the incident.  (*Id.* at 46:23–47:1.) |
| 19 | 22. Plaintiff never received any information from anyone else about what Mr. Alcorn saw at |
| 20 | the gym on the day of the incident.  (*Id.*) |
| 21 | 23. Plaintiff testified his only evidence was that he felt that the officers would jump him, |
| 22 | CCI's "atmosphere" was "let's whoop their asses and whatever happens," and because the |
| 23 | correctional officers "didn't follow procedure" and "protocol" when they allegedly lined |
| 24 | up at the rail at the gym.  (*Id.* at 53:9–54:4, 56:11–22, 57:15–22, 58:12–59:5, 60:10– |
| 25 | 61:11.) |
| 26 | **D.     Parties' Positions** |
| 27 | Defendant states that Plaintiff yelled and acted agitated when he entered the gym, |
| 28 | disregarded an order to face Defendant during the urine sample collection, walked towards |

Defendant while shaking his penis and saying, "what do you want to see my wee wee" and "you want to see a grown man's dick," refused to get down when ordered, and threw a urinalysis bottle at Defendant.  Defendant contends that the undisputed facts establish that the use of force was necessary.  Due to Plaintiff's assaultive behavior and repeated failures to obey Defendant's orders, Defendant feared that an attack on his person was imminent, and the use of force by using pepper spray and a baton was necessary to stop Plaintiff's threatening conduct towards Defendant.  There is no indication that Defendant's level of force was unreasonable.  Defendant also tried to temper the need to use force by repeatedly, but unsuccessfully, giving Plaintiff orders.  The undisputed facts also establish that the injuries Plaintiff suffered were very minimal.

In opposition, Plaintiff argues that he did not provoke Defendant, pose an imminent threat, or throw the urinalysis bottle at Defendant when Defendant emptied his OC pepper spray cannister by spraying it in Plaintiff's face.  Defendant's actions were not done in a good faith effort to maintain or restore order or discipline.  Plaintiff was following all instructions given to him for the urinalysis, and only when Plaintiff asked Defendant a question concerning the viewing of Plaintiff's private parts did Defendant become upset and attack Plaintiff without provocation.  Defendant's declaration is self-serving.  Defendant did not follow CDCR policy or demonstrate that he was trained in collection of urinalysis testing.  Plaintiff has asthma and is aware of the risk of being subjected to OC spray or pepper spray and would not willfully place himself in harm's way.  Plaintiff contends that Defendant wrote a false RVR against Plaintiff to cover up the excessive force, and the original medical report left out the injuries to Plaintiff's back.  A video interview was conducted by Lieutenant J. Tingley the next day, and a second medical report documented the injuries to Plaintiff's back that are clearly visible on the video.  Plaintiff's injuries are not de minimis, as to this day he suffers from unexplained pain in his back from where he was hit with the baton.  Defendant's summary judgment motion should be denied and this matter set for a jury trial.

In reply, Defendant argues that Plaintiff fails to dispute Defendant's evidence that show that his deployment of pepper spray and use of baton was necessary to maintain or restore discipline.  Defendant's declaration is not self-serving, as it is supported by the incident reports

prepared by Defendant, former Defendant Jones, and Sergeant Vera. Other than Plaintiff's self-serving testimony, he fails to submit any evidence to support his allegations that he was not agitated when he entered the gym, did not provoke Defendant, followed all of Defendant's orders, and did not throw the urinalysis bottle at Defendant. Plaintiff also does not submit any evidence to support his assertions that Defendant deployed his pepper spray with the purpose of causing harm to Plaintiff, Defendant lied in his RVR to justify the use of force against Plaintiff, or Defendant did not attempt to temper a forceful response. The cases cited in Plaintiff's opposition either support Defendant's summary judgment motion or are distinguishable. Although Plaintiff's argument that Defendant failed to comply with CDCR policies, specifically regarding the collection of urine samples, is irrelevant to the use of force claim at issue, those policies confirm that Defendant's conduct complied with CDCR's policies and procedures. Plaintiff's citation to the video interview fails to dispute that his injuries were very minimal, which is one factor to consider whether a use of force could have plausibly been thought necessary in a particular situation. The Court should grant Defendant's summary judgment motion and dismiss Plaintiff's claim.

### E.     Analysis

The parties' arguments as to whether Defendant Garcia followed CDCR policy with respect to the collection of urine samples, the extent of Plaintiff's injuries, or the applicability of case law cited by Plaintiff are not central to the Court's summary judgment findings, and therefore are not discussed at length here. The focus is whether Defendant used excessive force against Plaintiff during the incident at issue, not whether Defendant complied with CDCR regulations in ordering Plaintiff to allow him to view the sample collection. Whether Plaintiff suffered extensive or de minimis injuries as a result of the OC spray is an issue of damages, not liability.[4]

Ultimately, the parties offer contradictory versions of events, and each party has supported his version with factual statements made under penalty of perjury. Although Defendant has also

---

[4] While it is undisputed by the parties that Defendant used his baton against Plaintiff and left a bruise, any claims arising from Defendant's use of the baton, including any claim for damages as a result of the baton strike, were dismissed from this action due to Plaintiff's failure to exhaust his administrative remedies. (ECF Nos. 56, 57.)

1  offered unsworn statements made by other correctional staff in incident and medical reports, it is
2  impermissible for the Court to assess the credibility of the witnesses or weigh the evidence.
3  *Soremekun*, 509 F.3d at 984; *T.W. Elec. Serv., Inc., v. Pacific Elec. Contractors Ass'n*, 809 F.2d
4  626, 630–31 (9th Cir. 1987).  Thus, in a battle of dueling declarations, the winner may not be
5  declared based upon the number of declarations submitted or the contents therein, so long as the
6  declarations in question are based on personal knowledge of facts admissible in evidence.

7  Defendant argues that the facts as he has presented them are undisputed because Plaintiff
8  has provided only his own testimony to support his version of events.  While Plaintiff was unable
9  to produce statements from other correctional staff or inmate witnesses that would corroborate his
10 version of events, Plaintiff has consistently and repeatedly testified that he never threw the
11 urinalysis bottle at Defendant, acted aggressively, failed to disobey orders, or otherwise provoked
12 Defendant's use of force.  (*See, e.g.*, ECF No. 14 (First Amended Complaint); ECF No. 74
13 (Plaintiff's Opposition to Motion for Summary Judgment), pp. 11–12.)  Plaintiff stated during his
14 September 8, 2017 disciplinary hearing "he didn't assault anyone" and "denied . . . that he threw
15 his urine sample bottle at Officer Garcia."  (ECF No. 72-5, Ex. G, p. 27.)  Plaintiff again testified
16 under penalty of perjury during his April 29, 2019 deposition that the RVR for assault for
17 throwing the bottle at Defendant was fabricated, (Robertson Depo. at 101:2–25), and that the
18 container or vial was still in Plaintiff's hand after Defendant pepper sprayed him and Plaintiff was
19 on the ground, (*id.* at 64:12–65:9, 82:20–83:7).[5]

20 This is not a case where Plaintiff has presented only a "conclusory, self-serving affidavit,
21 lacking detailed facts and any supporting evidence" to support his version of events.  *See F.T.C.*
22 *v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11,

---

[5] To the extent a finding in Plaintiff's favor on the remaining claim in this action would invalidate the guilty finding in Plaintiff's disciplinary hearing that resulted in a loss of good time credits, the Court notes that *Heck v. Humphrey*, 512 U.S. 477 (1994), does not apply.  The Court may take judicial notice of public information stored on the CDCR California Incarcerated Records and Information Search ("CIRIS") website.  *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d. 1016, 1024 (N.D. Cal. 2014) (court may take judicial notice of information on "publicly accessible websites" not subject to reasonable dispute); *Louis v. McCormick & Schmick Restaurant Corp.*, 460 F. Supp. 2d. 1153, 1155 n.4 (C.D. Cal. 2006) (court may take judicial notice of state agency records).  According to the CIRIS website, Plaintiff is serving a sentence of life without the possibility of parole ("LWOP").  *Nettles v. Grounds*, 830 F.3d 922, 934–36 (9th Cir. 2016) (en banc) (California prisoner facing life term who challenged disciplinary hearing resulting in loss of good time credits would not necessarily be entitled to speedier release if successful and, as a result, could bring claim under Section 1983).

9

1997). Plaintiff repeatedly gave testimony, often under penalty of perjury, starting from the time of the incident, providing detailed facts based on his personal knowledge of the events as they transpired. That Defendant has also offered his own declaration signed under penalty of perjury, and the statements of other officers corroborating his differing version of events, serves only to demonstrate that there exist factual disputes between the parties regarding what occurred on January 24, 2017, and those disputes are material. As a result, the trier of fact must determine what did or did not happen between the parties on the date in question. Defendant is not entitled to judgment as a matter of law.

**IV.     Conclusion and Recommendation**

For the reasons explained above, the Court finds that Defendant is not entitled to summary judgment on Plaintiff's claim against Defendant Garcia for excessive force in violation of the Eighth Amendment for spraying Plaintiff with OC spray on January 24, 2017.

Accordingly, IT IS HEREBY RECOMMENDED that Defendant Garcia's motion for summary judgment, (ECF No. 72), be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:     **August 26, 2024**              /s/ *Barbara A. McAuliffe*
                                            UNITED STATES MAGISTRATE JUDGE